### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 1:23-cr-00170 (CJN) |
| DAVID ELIZALDE, | |
| *Defendant*. | |

### <u>MEMORANDUM OPINION</u>

The parties disagree on what the government must prove to establish that a defendant acted "knowingly" within the meaning of 18 U.S.C. §§ 1752(a)(1) and (a)(2). The government's proposed reading gives a single term in a single sentence two different meanings, which would be highly anomalous in any circumstance, but especially here, where Congress expressly defined the term. The Court will therefore issue bench instructions in line with the defendant's more natural reading of the statute.

### I.

At issue are two 18 U.S.C. § 1752 counts relating to Defendant David Elizalde's alleged conduct in a "restricted building or grounds" on January 6, 2021. Count 1 of the Indictment charges Elizalde with "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1). Count 2 charges him with "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in . . . any restricted building or grounds." *See id.* § 1752(a)(2).

Section 1752(c)(1) defines the term "restricted building or grounds." It says the term "means any posted, cordoned off, or otherwise restricted area" of (A) "the White House or its

grounds, or the Vice President's official residence or its grounds"; (B) "a building or- grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or (C) "a building or grounds so restricted in conjunction with an event designated as a special event of national significance."  The statute in turn defines "other person protected by the Secret Service" as "any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection."  *Id*. § 1752(c)(2).  Section 3056 lists the Vice President as one such person.  As a result, the parties agree that in this case the government must prove beyond a reasonable doubt that (1) the U.S. Capitol and its grounds were "posted, cordoned off, or otherwise restricted" and (2) a "person protected by the Secret Service" (here, the then-Vice President) was temporarily visiting the Capitol.  The parties also agree that the government must prove (for actus reus purposes) that Elizalde "enter[ed] or remain[ed]" (§ 1752(a)(1)) or "engag[ed] in disorderly or disruptive conduct" (§ 1752(a)(2)) in a "restricted building or grounds," so defined.

But the parties disagree over what the government must prove Elizalde *knew* about the Capitol on January 6.  According to the government, Elizalde need only have known that the area was restricted in the colloquial sense—*i.e.*, that there were barriers or other indicators that the public was not allowed to enter.  *See* Nov. 27, 2023 Pretrial Conf. (affirming that the government's view is that defendants need only know that an area is restricted "in a colloquial, layperson sense").  Elizalde argues that the government must prove that he knew that the area was a "restricted building or ground" as that term is statutorily defined—that is, that he knew (1) that the area was "posted, cordoned off, or otherwise restricted" and (2) that a "person protected by the Secret Service" (here, the then-Vice President) "[was] or [would] be temporarily visiting."  *See* 18 U.S.C. § 1752(c)(1).

II.

To resolve the dispute, the Court must determine what "knowingly" in §§ 1752(a)(1) and (a)(2) applies to.

A.

"Knowingly" might modify only those verbs that most closely follow it—*i.e.*, "enters" and "remains" in § 1752(a)(1) and "engages" in § 1752(a)(2). If so, the government would not have to prove that Elizalde knew anything about the area in which he allegedly entered or remained, or in or around which he allegedly engaged in disorderly or disruptive conduct; instead, it would need to prove only that Elizalde knowingly took his physical actions.

But the government affirmatively disclaims that reading, expressly taking the position that "knowingly" does apply to "restricted building or grounds." *See* Nov. 27, 2023 Pretrial Conf.; Gov.'s Notice of Additional Suppl. Authority ("Gov.'s Suppl. Br.") at 14, ECF No. 35 ("[T]he Government's position [is] that *the Government must prove . . . that the defendant knew that the building or grounds was restricted*.") (emphasis added); Ex. A, Gov.'s Notice of Suppl. Authority, ("Gov.'s Br.") at 9, 14, 16, ECF No. 32-1 (arguing that *defendant must "kn[o]w that the building or grounds was restricted*" (citations omitted) (emphasis added)). Indeed, the government's position is that "knowingly" applies to the entirety of the offenses—in § 1752(a)(1), for example, the government acknowledges it applies all the way to the phrase "without lawful authority." *See* Ex. A, Gov.'s Br. at 14; Gov.'s Suppl. Br. 14. In other words, both parties agree that for purposes of § 1752(a)(1) the government must prove (1) that Elizalde knowingly entered or remained in an area; (2) that he knew that area was a restricted building or grounds; and (3) that he knew he lacked legal authority to do so. Similarly for Count 2, the parties agree the government must prove,

among other things, (1) that Elizalde knowingly engaged in disorderly or disruptive conduct in or within proximity to an area, and (2) that he knew that area was a restricted building or grounds.

That seems correct.  As the Supreme Court has explained, "[a]s a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime."  *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) (quotation marks omitted).   Grammatically speaking, that is because an adverb like "knowingly" often modifies more than its most proximate verb.  "[W]hen a transitive verb" (like "enters") "has an object," (*e.g.*, "any restricted building or grounds"), "listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object."  *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009).

We all understand the concept.  As the Supreme Court has illustrated, if a bank official says "Smith knowingly transferred the funds to the account of his brother," "we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's."  *Id.* at 560–61.  And if a bank official says "Smith knowingly sent a bank draft to the capital of Honduras," the official has suggested that Smith knew where he sent the bank draft.  *Id.* at 561.  The same way, when Congress forbids "knowingly . . . engaging in disorderly or disruptive conduct in . . . any restricted building or grounds," 18 U.S.C. § 1752(a)(2), the ordinary understanding is that Congress has prohibited disorderly or disruptive conduct by those who know they are in a restricted building or grounds.  "Account of his brother," "capital of Honduras," and "restricted building or grounds" each play a similar role in their respective sentences, and "knowingly" modifies them all.

B.

The government's concession that "knowingly" modifies "restricted building or grounds" gives up the ballgame.  After all, the government concedes that it must prove that Elizalde in fact entered or remained in a statutorily defined "restricted building or grounds"—*i.e.,* that for actus reus purposes, "restricted building or grounds" means what the statutory definition says.  *See supra* pp. 2, 3.  But the government argues that that very term has a different meaning for mens rea purposes.  Such a result would be highly anomalous in any circumstance, but especially here, where Congress expressly defined the term.[1]  Because Congress has done so, "we must follow that definition, even if it varies from [the] term's ordinary meaning." *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (quotation omitted).

Thus, to know that an area is a "restricted building or grounds," one must know that the area is of the sort described in the statutory definition.  After all, a building or grounds is not a "restricted building or grounds" unless the building or grounds meets all the requirements of the statutory definition.  *See id.*  A defendant therefore lacks the requisite knowledge if all he knows is that the building or grounds is "restricted" in the colloquial sense.  Here, that means Elizalde must know that the area was a "posted cordoned off, or otherwise restricted area . . . of a building or grounds where [a] person protected by the Secret Service is or will be temporarily visiting."  *Id.*

---

[1] Under the government's interpretation, a person could "knowingly" enter a § 1752 "restricted building or grounds" even if the grounds are not restricted within the statutory definition.  For instance, under the government's view, when one enters a cordoned off site knowing that it is cordoned off, he has not in fact *entered* a "restricted building or grounds" (because the construction site does not meet the statutory definition), yet the person has *knowingly* entered a "restricted building or grounds" (because the site is restricted in a colloquial sense).  That strains credulity and the bounds of the English language.  The far more natural reading is that "restricted building or grounds" means what its statutory definition says for all purposes, at least absent strong contextual evidence to the contrary.

C.

The government levies a series of arguments to justify its counterintuitive reading, but none is availing.

1.    The government makes two main textual arguments.  First, it contends that Elizalde's reading requires "carrying 'knowingly' all the way through to the definition" in a separate subsection of the statute, beyond the particular "subsection defining the offense."  Ex. A, Gov.'s Br. 12; *see* Gov.'s Suppl. Br. 5, 9.  And "[k]nowingly," the government says (in this case at least),[2] cannot be read to travel so far.  *Id.*  But Elizalde's reading does not impute "knowingly" to far-away subsections.  Instead, Elizalde's reading simply incorporates the statutory definition where (a)(1) and (a)(2) use the defined term.  Thus, "knowingly" does not travel down from (a)(1) or (a)(2) to modify (c)(1).  Rather, it applies to the phrase "restricted building or grounds" in (a)(1) and (a)(2) which, because of the statutory definition, means what the statutory definition says.

On a similar tack, the government urges the Court to follow another court in this district that found it significant that "Congress specifically included a mens rea requirement in those

---

[2] Elsewhere, the government has seemingly taken the different position that "knowingly" *does* apply to the § 1752(c)(1) definition, but only "to the opening clause . . . but no further"—*i.e.,* that it applies only to "posted, cordoned off, or otherwise restricted area" but not to "of a building or grounds where . . . [a] person protected by the Secret Service is or will be temporarily visiting." U.S.'s Br. Regarding 18 U.S.C. § 1752 Mens Rea Requirement at 3–5, *United States v. Groseclose*, 21-cr-311, ECF No. 92; *see also* U.S. Br. at 42, *United States v. Couy Griffin*, 22-3042 (July 31, 2023).  But if "knowingly" applies to the statutory definition, it must apply to the "person protected by the Secret Service" portion of the definition under much the same logic that led to the conclusion that "knowingly" applies to "restricted building or grounds" in the first place.  *See supra* p. 4.  To know that an area is a "posted, cordoned off, or otherwise restricted area . . . where the President or other persons protected by the Secret Service is or will be temporarily visiting," one must know that the President or another Secret Service protectee is or will be temporarily visiting.

To the extent that the government in those cases advocates inserting the full statutory definition for actus reus purposes but only the "posted, cordoned off, or otherwise restricted area" language for mens rea purposes, it again runs into the anomaly of a single term—"restricted building or grounds"—having two different meanings.

portions of the statute laying out the elements of the offense, while excluding that mens rea requirement in the definitional provision." *See* Ex. A, Gov.'s Br. 15–16 (quoting *United States v. Couy Griffin*, 21-CR-92, Tr. of Bench Trial, Doc. 106, 330–32); Gov.'s Supp. Br. 10 n.5 (same). But Congress had no need to include "knowingly" in the statutory definition. No party disputes that Congress did not need to repeat the actus reus terms in the statutory definition in order to have the statutory definition apply for actus reus purposes. The same is true for the mens rea term. Congress already required knowledge of the "restricted building or grounds" element by using "knowingly" in the substantive provisions; it specified what "restricted building or grounds" means by defining the term. Moreover, it would have been exceptionally strange for Congress to include a mens rea element in the *definition*: A particular defendant's knowledge is irrelevant to whether a given area *is* a "restricted building or grounds"; knowledge matters only when it comes to determining whether an individual *violated* the statute by engaging in a particular action in a "restricted building or grounds."

*Rehaif* illustrates these points. At issue in *Rehaif* was 18 U.S.C. § 924(a)(2), which stated that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." Section 922(g) in turn provided that "it shall be unlawful" for certain individuals (*e.g.*, felons, aliens unlawfully in the country) to possess firearms; it did not have any mens rea term. The question was whether "the Government must prove that a defendant knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country or the like)." 139 S. Ct. at 2194.

The Supreme Court answered in the affirmative—that to convict a defendant under § 924(a)(2), the government must "show that the defendant knew he possessed a firearm and also

that he knew he had the relevant status when he possessed it." *Id.*  In other words, because "knowingly" modified the phrase "subsection . . . (g) . . . of section 922" in § 924(a)(2), it also modified the content of that phrase, which was provided by an entirely different section of the United States Code—18 U.S.C. § 922(g).  That interpretation did not require applying the term "knowingly" two sections of the code over to § 922(g).  Instead, as here, it only required reading "knowingly" to apply to the language in its own subsection, which happened to be given meaning by another provision.  Nor did it matter that Congress included a mens rea element in § 924(a)(2), but not in § 922(g)—the statute still required the government to prove that the defendant knew of his § 922(g) status.

2.      The government also relies on a recent Court of Appeals decision.  Gov.'s Supp. Br. 9–10 (citing *United States v. Jabr*, 4 F.4th 97 (D.C. Cir. 2021)).  The government claims that the Court held there was evidence "sufficient to meet the 'knowingly' requirement" because there was evidence that the area in question (the White House and its grounds) was colloquially restricted—that it had "two fences, one with a padlock, and police presence in the area."  Gov.'s Suppl. Br. 10.

That misreads the opinion.  In *Jabr*, the Court of Appeals addressed the defendant's contention that "there was insufficient evidence to prove beyond a reasonable doubt that she was '*without lawful authority*' to 'enter' the White House or its grounds."  4 F.4th at 105 (quoting 18 U.S.C. § 1752(a)(1)) (emphasis added).  The Court was not responding to any argument that there was insufficient evidence regarding *knowledge*, let alone knowledge regarding whether the area was a *restricted building or grounds*.  Thus, when the Court pointed to the presence of fences and police and stated that "a rational trier of fact could presume as a matter of common knowledge that an ordinary citizen without any known authorization would not be allowed inside the White House

or its grounds," *id.*, it was saying that there was sufficient evidence for the jury to conclude that the defendant was in fact "without lawful authority" to enter the White House and its grounds—a conclusion that does not bear on the issue presented here.

3.      The government also focuses on arguments rooted in legislative intent and policy. The government argues that Elizalde's reading cannot be right because the legislative history shows that "it is unquestionable that the Congressional intent behind the enactment of § 1752 was to ensure powerful and effective protection of Secret Service protectees." Gov.'s Suppl. Br. 11. And, according to the government, requiring knowledge of the Secret Service protectee's presence would thwart that intent by making enforcement more difficult as a practical matter. *Id.* at 6.

But when "Congress may have been concerned about criminalizing the conduct of a broader class of individuals, concerns about practical enforceability are insufficient to outweigh the clarity of the text." *Flores-Figueroa*, 556 U.S. at 656.   And here, Congress may well have acted cautiously to avoid sweeping up conduct that poses little threat to a Secret Service protectee. It seems unlikely that someone who ends up near a Secret Service protectee by happenstance, without knowing that the protectee is present, is there to cause the protectee harm.  It is hardly absurd, then, to think that Congress may have written the statute to avoid unnecessarily sweeping up low-risk individuals—such as someone who seeks to shorten his walk home by crossing a cordoned off construction site that, unbeknownst to him, the President plans to visit later that day.

Other textual indicators similarly suggest that Congress chose not to write this statute as expansively as it might have.  If Congress wanted to be as protective as possible, it could have used "negligently" or "recklessly" rather than knowingly, but it was unwilling to sweep in those less culpable individuals.  Congress also made the offenses with which Elizalde is charged mere misdemeanors, rather than more harshly punishable felonies.

The government is no doubt correct that Congress wanted to safeguard Secret Service protectees.  But courts have long refused to "simplistically . . . assume that *whatever* furthers the statute's primary objective must be the law."  *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam).  After all, "no legislation pursues its purposes at all costs."  *Id.* at 525–26.

4.      Coming at it from another angle, the government contends that an intent- and purpose-based approach is appropriate here because courts have utilized a similar approach to broadly interpret statutory protections for minors.  Gov.'s Suppl. Br. 5–6.   When interpreting statutory prohibitions on sex crimes against minors, courts have indeed declined to require the government to prove a defendant's knowledge of the victim's age.  *See, e.g.*, *United States v. Morgan*, 45 F.4th 192, 206–07 (D.C. Cir. 2022).  But those cases are nearly *sui generis* and their reasoning is inapposite here.  Indeed, it is long recognized that child-sex crime cases are an "*except[ion]*" to the general "presumption of *mens rea*."  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.2 (1994) (emphasis added); *see United States v. Burwell*, 690 F.3d 500, 537 & n.10 (D.C. Cir. 2012) (en banc) (Kavanaugh, J., dissenting) (describing child-sex crime cases as a "categorical qualification[] to the presumption" that "mens rea applies to each element of the offense unless Congress has plainly indicated otherwise").

The government has offered no compelling reason to extend that exception here.  In the context of child-sex crimes, there is a strong ordinary-understanding argument in favor of not extending a statute's mens rea terms to the age element.  Namely, one of the "most well-known offense elements that [has been] historically applied in a strict liability manner [is] the victim's age in a statutory rape case."  *Burwell*, 690 F.3d at 537 n.10 (Kavanaugh, J., dissenting).  That background understanding creates a reasonable contextual assumption that legislatures do not

intend to apply a mens rea term to an age element unless the legislature expressly indicates to the contrary.  The government has not pointed the Court to that kind of historical tradition here.

Of course, the "purpose of declining to require knowledge of the victim's age in the context of sex offenses involving minors is . . . protection of minors." *Morgan*, 45 F.4th at 207.  But that does not mean a presumption against mens rea attaches whenever a criminal statute has the purpose of protecting *someone*—a purpose motivating much of the federal criminal code.  Indeed, the Supreme Court has described the exception to the presumption of mens rea in child-sex statutes and its justifications quite narrowly.   The child-sex "except[ion]" to the "presumption of *mens rea*" generally applies only when crime is one where "the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim's age." *X-Citement Video*, 513 U.S. at 72 n.2.  Thus, the Court read a statute targeting the distribution of child pornography to require proof that the defendant knew that a child under 18 was depicted.  *Id.* at 70, 78.  If the child-sex exception does not extent even to child-pornography-distribution cases, it surely does not extend to this one.

4.     The government's two remaining arguments seem to aim at illusory targets. The government repeatedly emphasizes that "nothing in the statutory text requires the government to prove . . . *why* [the area] was restricted."  Ex. A, Gov.'s Br. 8–9 (emphasis added); Gov.'s Suppl. Br. 3.  That is true, but irrelevant.  Both parties are on the same page in this respect: neither argues that the government must prove that Elizalde knew *why* the area was a "restricted building or grounds" as defined by the statute.  Yes, Elizalde's argument requires the government to prove his knowledge of an additional fact—here, the Vice President's presence at the Capitol.  And yes, that additional fact may sometimes be the reason why the area was restricted, in the colloquial sense (*e.g.*, an area may be cordoned off because the Vice President is there).   But Elizalde's proposed

instruction does not require the government to prove any knowledge on his part regarding the *reason* why the area was restricted. [3]

Indeed, the additional fact that makes an area "restricted building or grounds" as defined by the statute will not always be the reason why the area was restricted in the non-definitional sense. After all, every cordoned off area where a Secret Service protectee is present is a § 1752 "restricted building or grounds," but not every cordoned off area where a secret service protectee is present is cordoned off *because* a secret service protectee is present. Here, for example, it is unclear that then-Vice President Pence's presence at the Capitol on January 6, 2021 was the only reason (or even the primary reason) why the Capitol building and grounds were posted and cordoned off. The building and grounds may have been restricted (in the colloquial sense) because of the nearby rally and the joint session of Congress. Elizalde's reading does not require proof that he knew the reason the grounds were restricted in the definitional sense; rather, it simply requires proof that he knew the Vice President was present.

---

[3] Elizalde's position, in other words, is that the government can carry its burden by proving that he knew that the Vice President was or would be temporarily visiting, nothing more. Again, that seems correct. The mens rea element "knowingly" generally requires "the defendant [to] know the facts that make his conduct illegal." *Elonis v. United States*, 575 U.S. 723, 752–53 (2015) (citation omitted); *see McFadden v. United States*, 576 U.S. 186, 194–95 (2015) (explaining that a defendant has the requisite knowledge when he "knows all of the facts that make his conduct illegal"). Accordingly, the question becomes: What facts make a defendant's conduct illegal for the purposes of the "other person protected by the Secret Service" requirement? A statutory definition again provides the answer. Section 1752(c)(2) says that "the term 'other person protected by the Secret Service' means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection." Section 3056 lists a series of people who the Secret Service is authorized to protect, including the Vice President. Therefore, once someone knows that the Vice President is present, he knows all of the *facts* that satisfy the "other person protected by the Secret Service" requirement. He of course may not know that § 3056 lists the Vice President, that § 1752 references § 3056, or that § 1752 even exists in the first place. But those are all examples of the defendant's ignorance of the *law*, which is no defense. *See McFadden*, 576 U.S. at 186.

The government also claims that "knowingly" cannot apply to the "person protected by the Secret Service" part of the definition because, it says, conduct prohibited by §§ 1752(a)(1) and (a)(2) can be wrongful even when the perpetrator does not know that a Secret Service protectee is present.  But Elizalde's reading does not rely on a contrary position.  After all, Congress does not criminalize everything that the government might consider "wrongful."

At best, the government's argument rebuts a potential *additional* rationale for Elizalde's reading.  The Supreme Court has held that in criminal statues, "a word such as 'knowingly' modifies not only the words directly following it, but also those other statutory terms that separate wrongful from innocent acts."  *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022) (quotations omitted).  Thus, if applying "knowingly" to the defined meaning of "restricted building or ground" were necessary to separate wrongful from innocent acts, that may provide an independently sufficient reason to adopt Elizalde's reading.  But no matter if not; Elizalde has the text's plain meaning on his side.

III.

For the foregoing reasons, the government must prove beyond a reasonable doubt that Elizalde knew (1) that the U.S. Capitol and its grounds were "posted, cordoned off, or otherwise restricted" and (2) that a "person protected by the Secret Service" (here, the then-Vice President) "[was] or [would] be temporarily visiting."  The Court will issue final bench instructions consistent with this opinion.

DATE:  December 1, 2023

CARL J. NICHOLS
United States District Judge

13